UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS WILLHITE,

        Petitioner,

                              CASE NO. 05-CV-40297-DT
v.                             HONORABLE PAUL V. GADOLA

MILLICENT WARREN,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Marcus Willhite, a state prisoner presently confined at the Thumb Correctional Facility in Lapeer, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of second-degree murder and felony firearm following a jury trial in the Wayne County Circuit Court in 2002. He was sentenced to consecutive terms of 12 to 25 years imprisonment and two years imprisonment on those respective convictions.

In his pleadings, Petitioner raises claims concerning the suppression of testimony and the non-production of a witness at trial. For the reasons stated below, the Court denies the petition for a writ of habeas corpus.

**I.**       **Facts**

Petitioner's convictions stem from the shooting death of Anthony Taylor during an argument outside Taylor's home in Detroit, Michigan on August 6, 2001. Prior to trial, the prosecution moved to strike an endorsed witness, Latisha Hill, because she was residing in California, had been subpoenaed, and had been given airline tickets, but still had not appeared for trial due to childcare problems. The trial court found that the prosecution had exhibited due diligence in attempting to

1

produce Hill and excused the prosecution from further action in compelling her appearance at trial.

At trial, Larry Howard, Anthony Taylor's father, testified that Petitioner hit Taylor with a baseball bat during a dispute a few weeks before the shooting incident and that his family was aware of this incident. During the early morning hours on August 6, 2001, Howard was awoken by his fiancee, Georgia Henley. He went outside and saw his son and Petitioner arguing near the open door of a car. Both of the men were armed with guns. Howard tried to break up the fight by asking the driver of the car to grab Petitioner's gun, but he was unsuccessful. Eventually, Taylor said "hell with it" and turned to walk away. As he did so, Petitioner fired a shot. Taylor said, "duck, Daddy" and Howard moved out of the way. Howard stated that Petitioner kept firing and shot at Taylor after he fell. Taylor fired the sawed-off shotgun, which made a loud noise. Petitioner then jumped in the car with the driver. As they drove away, Petitioner fired another shot out of the car window. Howard grabbed Taylor's shotgun and ran through the alley after the car. He then dropped the gun and returned to his son. Howard spoke to the police when they arrived and told them where he threw the shotgun. Howard admitted that his son was angry and cursing during the dispute.

Georgia Henley testified that she saw Taylor and Petitioner arguing loudly near the door of a car on the street. She woke up Howard who then went outside. From the porch, she saw Petitioner holding a gun which was pointed toward the driver, Dwayne Lewis. She then saw Taylor back up two steps and heard two gunshots and a booming sound. She ducked and when she looked up, she saw Taylor on the ground. She then heard two more shots. Petitioner left in the car with the driver. Henley then went to Taylor and held him as Howard picked up the shotgun and ran. Henley spoke to police at the scene.

Police officers also testified regarding their investigation of the shooting. The police found Taylor's body face up in the street next to a gouge mark in the pavement. Police recovered

Petitioner's handgun which had four spent casings and two live rounds. They also recovered Taylor's sawed-off shotgun which contained a spent shell.

Dr. Yung A. Chung examined Taylor's body and concluded that he died of two gunshot wounds to the back. No bullets were retrieved from the body and there was no evidence of close range firing.

At trial, Petitioner argued that he shot the victim in self-defense. Dwayne Lewis, the driver of the car, testified on Petitioner's behalf. Lewis testified that Petitioner called Lewis to pick Petitioner up at about 2:00 a.m. on August 6, 2001. As Petitioner approached the car, Taylor "walked up on him." Lewis said that Taylor was angry, using profanity, and making threats. When defense counsel asked what Taylor said, the prosecution objected on hearsay grounds. An unrecorded bench conference occurred. Lewis then testified that Taylor had a gun and was pointing it at Petitioner's head and putting his fingers in Petitioner's eyes. Defense counsel again asked what Taylor said, but the prosecutor objected and the trial court sustained the objection. Lewis stated that Howard unsuccessfully tried to take Petitioner's gun, which was pointed at Lewis and asked Lewis to take it, but he refused. Taylor then shot at Petitioner's feet. As Taylor stepped back, Petitioner fired his gun, jumped in the car, and they left the scene. Petitioner also fired a shot out of the window as they were driving away. Lewis testified that Taylor was doing most of the talking and cursing and Petitioner was crying during the dispute. Lewis gave a statement to the police following the incident.

At the close of trial, the court instructed the jury on second-degree murder and voluntary manslaughter. The jury found Petitioner guilty of second-degree murder and felony firearm. The trial court subsequently sentenced Petitioner to consecutive terms of 12 to 25 years imprisonment and two years imprisonment on his convictions.

3

## II. <u>Procedural History</u>

Following sentencing, Petitioner filed an application for delayed appeal with the Michigan Court of Appeals raising the claims contained in the present petition, which was denied for lack of merit in the grounds presented. *People v. Willhite*, No. 250091 (Mich. Ct. App. Dec. 18, 2003) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Willhite*, 471 Mich. 888, 687 N.W.2d 296 (2004).

Petitioner thereafter filed the present petition for writ of habeas corpus raising the following claims:

>   I.  The trial court erred as a matter of law, abused its discretion, and denied him a fair trial by suppressing threats by the victim in a self-defense case.
>
>   II. The prosecutor's failure to produce a crucial *res gestae* witness, and the trial court's failure to order her production, denied him a fair trial; in the alternative he was denied his right to effective assistance of counsel.

Respondent has filed an answer to the petition asserting that it should be denied for lack of merit.

## III. <u>Standard of Review</u>

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.' " *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an

5

issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.   Analysis**

A.   Suppression of Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court suppressed testimony from Dwayne Lewis regarding the content of Anthony Taylor's threats to Petitioner during their argument.

To the extent that Petitioner alleges that the trial court violated the Michigan Rules of Evidence by suppressing Lewis' testimony regarding Taylor's threats, he is not entitled to relief from this Court. Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967). However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted).

6

In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. Rather, the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (defendant was denied right to present a defense when he was precluded from cross-examining a key witness and calling three favorable witnesses).

In this case, the trial court suppressed Dwayne Lewis' testimony about the content of Anthony Taylor's threats without providing an explanation for this ruling on the record. The Michigan Court of Appeals denied Petitioner's application for delayed appeal for lack of merit in the grounds presented, but did not address this issue as a matter of federal law. Accordingly, this Court must conduct an independent review of the state court's decision. *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. This independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id*.

The state court's decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law. Petitioner was not deprived of a meaningful opportunity to present his self-defense claim. The record is replete with testimony that Petitioner and Anthony Taylor were in a heated argument and that they were both armed at the time of the shooting. Although Dwayne Lewis did not testify about the content of Taylor's threats, he did state

7

that Taylor threatened Petitioner and was cursing at Petitioner during the argument. Even Taylor's own father testified that Taylor was angry, armed, and using profanity. Because the evidence admitted at trial gave Petitioner a sufficient foundation for his claim that he shot Taylor in self-defense, the exclusion of additional, cumulative evidence did not deprive him of a fair trial. *See, e.g., Davis v. Burt*, 100 Fed. Appx. 340, 350 (6th Cir. 2004); *McCullough v. Stegall*, 17 Fed. Appx. 292, 295 (6th Cir. 2001). Furthermore, Petitioner has not indicated what Dwayne Lewis would have said if he had been allowed to divulge further information, nor has Petitioner shown that the disclosure of any such information would have aided his self-defense claim. Conclusory allegations are insufficient to warrant habeas relief. *See Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998).

Lastly, even assuming that the trial court erred in suppressing the statements, such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict). Harmless error analysis applies to confrontation-type errors. *See Delaware v. VanArsdall*, 475 U.S. 673, 684 (1986). In reviewing whether such an error is harmless, a reviewing court should consider the importance of the witness's testimony, the cumulative nature of the testimony, whether the testimony is corroborated or contradicted on material points, and the overall strength of the case. *Hill v. Hofbauer*, 337 F.3d 706, 718 (6th Cir. 2003) (citing *VanArsdall*, 475 U.S. at 684).

As discussed *supra*, the jury was well aware of Petitioner's self-defense claim and of the

evidence which could support such a defense, including the testimony of the victim's own father. Lewis was able to testify that Taylor threatened Petitioner even though the exact nature of those threats was not disclosed. The jury nonetheless concluded that Petitioner did not act in self-defense. The prosecution presented significant evidence of Petitioner's guilt of second-degree murder, including testimony which indicated that Petitioner shot Taylor in the back as Taylor turned away from him. The trial court's suppression of Lewis' testimony concerning the content of Taylor's threats did not have a substantial or injurious effect or influence upon the jury's verdict. Petitioner has failed to establish that the trial court's ruling violated his constitutional rights or rendered his trial fundamentally unfair. Habeas relief is therefore not warranted on this claim.

  B. <u>Due Diligence Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the prosecution failed to produce *res gestae* witness Letisha Hill and failed to establish due diligence in attempting to secure her presence for trial. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). The prosecution in a criminal trial must make a good faith effort to produce relevant witnesses. *See, e.g., Barber v. Page*, 390 U.S. 719, 724-25 (1968). The standard for evaluating whether the prosecution has made a good faith effort to produce a witness is one of reasonableness. *Ohio v. Roberts*, 448 U.S. 56, 74 (1990). The failure to produce a relevant witness only serves as a basis for habeas corpus relief if, under federal constitutional law, the petitioner is denied a fundamentally fair trial. *See Moreno v. Withrow*, 61 F.3d 904, 1995 WL 428407, *1-2 (6th Cir. 1995) (failure to call *res gestae* witness did not render trial fundamentally unfair and did not constitute prosecutorial misconduct).

In this case, the trial court allowed the prosecution to strike Latisha Hill as a witness, concluding that the prosecution had exhibited due diligence. The Court found that although Hill remained in California, the prosecution had subpoenaed her and sent her airline tickets to return to Michigan for the trial. Nevertheless, Hill failed to appear as a result of childcare problems. The Michigan Court of Appeals denied Petitioner's application for delayed appeal for lack of merit in the grounds presented.

Having considered the matter, this Court finds that the state court decisions are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record demonstrates that the prosecution put forth significant efforts to secure the appearance of Latisha Hill. Nevertheless, Hill failed to appear. Given such evidence, the Court concludes that the prosecution made reasonable efforts to produce the witness and that Petitioner's due process rights were not infringed by the failure to produce Hill at trial.

Further, even if the failure to produce Hill violated Petitioner's constitutional rights, he is not entitled to relief from this Court. As noted, for purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637; *see also O'Neal*, 513 U.S. at 445. Harmless error analysis applies to Confrontation Clause errors. *VanArsdall*, 475 U.S. at 684. The failure to produce Latisha Hill at trial was harmless. First, Hill's likely testimony that Taylor was angry with Petitioner was cumulative to the other evidence admitted at trial. The jury was well aware that Taylor was armed and was yelling and cursing at Petitioner during the argument. Second, given the other evidence presented at trial, particularly the testimony of Larry Howard, Georgia Henley, and Doctor Chung, there was ample evidence for the jury to find Petitioner guilty of second-degree murder and felony firearm beyond

a reasonable doubt and to reject his self-defense claim. Petitioner has not shown that the testimony of the unavailable witness was crucial or particularly beneficial to his defense such that its omission had a substantial or injurious influence or effect on the jury's verdict. Habeas relief is not warranted on this claim.

Petitioner relatedly asserts that defense counsel was ineffective for failing to secure Hill's presence at trial by seeking the issuance of a bench warrant and by failing to request an adverse witness instruction. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to

11

undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Given the Court's determination that Latisha Hill's testimony would have been cumulative to other testimony and would not have affected the outcome at trial, Petitioner cannot establish that defense counsel was deficient and/or that he was prejudiced by counsel's conduct in this regard. *See Chegwidden v. Kapture*, No. 03-1527, 2004 WL 551471, *2 (6th Cir. March 18, 2004) (counsel is not ineffective for failing to make unwarranted objections or motions). Habeas relief is not warranted on this claim.

### C. Certificate of Appeal

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but

must limit its examination to a threshold inquiry into the underlying merit of the Petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id*. at 323.

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right with respect to any of the claims presented. *See* 28 U.S.C. § 2253(c) (2). Petitioner should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484. Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long v. Stovall*, No. 2006 WL 2711824, * 6 (E.D. Mich. Nov. 14, 2006). The Court will also deny Petitioner leave to appeal in forma pauperis, because the appeal would be frivolous. *Hence v. Smith*, 49 F.Supp.2d 547, 549 (E.D. Mich.1999).

## V.     Conclusion

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, for the reasons stated above, a certificate of appealability and leave to appeal in forma pauperis are **DENIED**.

**SO ORDERED.**

Dated:  February 9, 2007         s/Paul V. Gadola
                                  HONORABLE PAUL V. GADOLA
                                  UNITED STATES DISTRICT JUDGE

4:05-cv-40297-PVG-WC   Doc # 23   Filed 02/09/07   Pg 14 of 15   Pg ID 831

14

Certificate of Service

I hereby certify that on  February 9, 2007 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:                                                   Brad H. Beaver                                        , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                      Marcus Wilhite                                        .


                                                                                s/Ruth A. Brissaud                       
                                                                                Ruth A. Brissaud, Case Manager
                                                                                (810) 341-7845